# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 14-07784 MMM (JEMx) | Date | January 20, 2015 |
|---|---|---|---|

| Title | *Anthony Christ v. Staples, Inc.* |
|---|---|

| Present: The Honorable | MARGARET M. MORROW | |
|---|---|---|
| ANEL HUERTA | | N/A |
| Deputy Clerk | | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** Order Remanding Action to Los Angeles Superior Court

On July 10, 2014, Anthony Christ filed this action in Los Angeles Superior Court against Staples, Inc. and Staples Contract and Commercial ("SCC") (collectively "Staples"), Mario Gutierrez, Rick Millan, Larry Terrazas, Adrian Martinez (collectively, "individual defendants") and various fictitious defendants.[1] The complaint pleads ten causes of action: (1) wrongful termination in violation of public policy; (2) breach of express oral contract not to terminate employment without good cause; (3) breach of implied-in-fact contract not to terminate without good cause; (4) age discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), California Government Code § 12900, *et seq.*; (5) harassment on the basis of age in violation of FEHA; (6) retaliation for reporting discrimination or harassment in violation of FEHA; (7) disability discrimination in violation of FEHA; (8) harassment on the basis of disability in violation of FEHA; (9) violation of California Labor Code § 1102.5, et seq.; and (10) violation of the Private Attorney General Act ("PAGA"), California Labor Code §§ 2698-2699.5.[2] Only two claims are alleged against the individual defendants: the fifth cause of action for age harassment in violation of FEHA and the eighth cause of action for disability harassment in violation of FEHA.

Defendants removed the action on October 7, 2014, invoking the court's diversity jurisdiction under 28 U.S.C. 1332(a). The notice of removal alleges that the individual defendants were fraudulently joined

---

[1] Notice of Removal ("Removal"), Exh. 1 ("Complaint"), Docket No. 1 (Oct. 7, 2014).

[2] *Id.*

to defeat diversity.³ On October 14, 2014, defendants filed a motion to dismiss Christ's complaint.⁴ On November 28, 2014, the court issued an order to show cause why the case should not be remanded for lack of subject matter jurisdiction.⁵ The court noted it was unclear from the notice of removal that the individual defendants had been fraudulently joined, and directed defendants to show cause on or before December 10, 2014, why federal jurisdiction had been properly invoked.⁶

On December 2, 2014, Christ filed a motion to remand.⁷ On December 10, 2014, defendants filed a response to the order to show cause.⁸ Christ filed opposition to defendants' motion to dismiss on January 5, 2015.⁹

## I. FACTUAL BACKGROUND

Christ alleges that he is a 43-year-old male who suffers from a bad back and bad knee; he asserts these conditions constitute a disability under California law.¹⁰ Christ worked as a truck driver for Staples and its predecessor, Corporate Express N.V. ("Corporate Express"), for approximately fifteen years, from September 9, 1999 to March 12, 2014.¹¹ He began his career at Corporate Express as a Driver II, and was later promoted to Lead Driver before returning to the Driver II position when Staples acquired and began to operate Corporate Express in 2008.¹² After Staples took over, Corporate Express employees became Staples employees.¹³ Christ alleges that, prior to March 2014, he had never received a warning for

---

³See Removal, ¶¶ 6-9 (conceding that Gutierrez, Millan, Terrazas, and Martinez are "California resident[s]" but asserting they are "sham defendant[s]").

⁴Motion to Dismiss, Docket No. 20 (Oct. 14, 2014).

⁵Order to Show Cause re: Diversity Jurisdiction, Docket No. 23 (Nov. 28, 2014).

⁶*Id.* at 1-2.

⁷Motion to Remand ("Motion"), Docket No. 24 (Dec. 2, 2014).

⁸Response to Order to Show Cause, Docket No. 26 (Dec. 10, 2014). Staples filed errata the same day, withdrawing the response filed at docket number 26. (Notice of Errata, Docket No. 27 (Dec. 10, 2014).) It filed a corrected response later in the day on December 10, 2014. (Response to Order to Show Cause ("Response"), Docket No. 28 (Dec. 10, 2014).) The court's citations in this order refer to the corrected response that is Docket No. 28.

⁹Opposition to Motion to Remand, Docket No. 29 (Jan. 5, 2015).

¹⁰Complaint, ¶ 6.

¹¹*Id.*, ¶ 5.

¹²*Id.*, ¶¶ 5, 7.

¹³Id., ¶ 7.

inappropriate workplace conduct, and in fact had received a certificate of appreciation in recognition of his dedicated service.[14]

Christ asserts that his direct supervisors were individual defendants Mario Gutierrez, Ricky Millan, Larry Terrazas, and Adrian Martinez.[15] He contends that, following Staples' acquisition of Corporate Express, there were two distinct groups of drivers in the unified company: (i) former Corporate Express employees, who were older and full-time; and (ii) former Staples employees, who were often younger, part-time employees.[16] Christ asserts that Gutierrez "especially favored" younger Staples employees.[17] Due to Staples' poor financial performance, Gutierrez was purportedly looking for ways to cut costs by hiring younger drivers to replace older employees, like Christ.[18] To that end, Gutierrez instituted a driving academy that exclusively accepted young drivers.[19] Christ alleges that defendants also imposed requirements that drivers complete their routes in a certain amount of miles; they allegedly discriminated against older drivers such as Christ in this regard. Specifically, Christ contends that he was unrealistically ordered to complete an 80 mile route in 60 miles or less.[20] When Christ failed to accomplish this impossible task, he was reprimanded.[21]

Christ alleges that, on February 27, 2014, during his normal stretching routine, he "playfully grazed" the hand of a co-worker, Victor Mendoza. When Mendoza "prodded" back, Christ contends that he playfully pushed him.[22] Martinez and Terrazas watched the events take place and failed to intervene in an meaningful way given the nature of the interaction; they simply told the two men "no horse playing."[23] Staples requires that incidents like horse play be memorialized in a report written by a supervisor; Martinez, however, never wrote a report, purportedly because the incident was so minor.[24] On March 4, 2014, Christ's co-worker, Ricardo Carmona told Christ that someone had gone to the human resources department to

---

[14]*Id.*, ¶¶ 5, 7.

[15]Id., ¶ 5.

[16]Id., ¶ 7.

[17]*Id.*

[18]*Id.*

[19]*Id.*

[20]*Id.*

[21]*Id.*

[22]*Id.*

[23]*Id.*

[24]*Id.*

complain about the incident.[25] The following day, Christ and Gutierrez had a conference call with a supervisor to discuss the incident.[26] During the call, Gutierrez objected to Christ's description of the encounter with Mendoza. Gutierrez purportedly stated falsely that he had engaged in acts of violence; Gutierrez allegedly did so in an effort to have him terminated.[27] After the conference call concluded, Gutierrez informed Christ that he was suspended.[28] On March 12, 2014, Christ was terminated.[29] Christ's position was subsequently filled by a younger employee.[30]

## II. DISCUSSION

### A. Legal Standard Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows a defendant to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a). Only state court actions that could originally have been filed in federal court can be removed. 28 U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988); *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985); *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

---

[25]*Id.*

[26]*Id.*

[27]Motion at 11 (Gutirrez made an investigation out of a minor horseplay incident that led to plaintiff's termination. . . . [U]sing fake write-ups is harrassing conduct that falls outside the scope of necessary job performance"). As discussed *infra*, the court can pierce the pleadings in determining whether a defendant has been fraudulently joined.

[28]Complaint, ¶ 7.

[29]*Id.* ¶ 8.

[30]*Id.*

### B.    Whether the Court Should Remand the Action to Los Angeles Superior Court

As noted, defendants contend the court has diversity jurisdiction to hear the action.[31] "The district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between . . . citizens of different States." 28 U.S.C. § 1332(a); see also *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000"). In any case where subject matter jurisdiction is premised on diversity, there must be complete diversity, i.e., all plaintiffs must have citizenship different than all defendants. See *Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267 (1806); see also *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 & n. 3 (1996).[32]

#### 1.    Staples, Inc.'s and SCC's Citizenship

Staples and SCC are both corporations. A corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The term "principal place of business" means "the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination[.]" *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). In the notice of removal, Staples, Inc. and SCC allege that they are both Delaware corporations that maintain their principal places of business in Massachusetts.[33] Accordingly, they are citizens of Delaware and Massachusetts.

#### 2.    Christ's Citizenship

A person is a citizen of the state in which he is domiciled, i.e., the state in which he has a permanent home where he intends to remain or to which he intends to return. See *Gilbert v. David*, 235 U.S. 561, 569 (1915); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return"). "The status of the parties' citizenship . . . can be determined from the complaint or from other sources, including statements made in the notice of removal." *HSBC Bank USA, NA v. Valencia*, No. 09–CV–1260–OWW–JLT, 2010 WL 546721, *2 (E.D. Cal. Feb. 10, 2010); see also *Kanter*, 265 F.3d at 857 (examining the complaint and notice of removal to determine citizenship).

---

[31]The court does not have federal question jurisdiction to hear the action because all of Christ's claims are state law claims that do not raise a federal question. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

[32]Complaint, ¶ 1.

[33]Removal, ¶¶ 16-19.

Christ alleges only that he is a California resident.[34] In the notice of removal, defendants assert that he is a California citizen,[35] citing his allegations that he is a California resident, that he worked for Staples and Corporate Express in California from 1999 to 2014, and that he has a California driver's license.[36] It appears from the complaint that Christ has lived and worked in California for approximately fifteen years and holds a driver's license issued by the state. This is sufficient to support a finding that he is a California citizen. See *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("[D]etermination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes").

### 3. Individual Defendants' Citizenship

The complaint alleges that all of the individual defendants are California residents.[37] In the notice of removal, defendants concede that the individual defendants are citizens of California; they argue, however, that their citizenship should be disregarded in determining whether the court has subject matter jurisdiction because each of them were fraudulently joined.[38] The court must therefore determine whether all the individual defendants were fraudulently joined. If each was, his citizenship must be disregarded in determining whether diversity jurisdiction exists; if even one was not, the action must be remanded for lack of subject matter jurisdiction. See *Hornby v. Integrated Project Mgmt., Inc.*, No. CV 14-04331 LB, 2014 WL 7275179, *7 (N.D. Cal. Dec. 22, 2014) ("Based on the above, the court finds that Ms. Hornby has at least 'one potentially valid claim against a non-diverse defendant,' and thus Defendants have not met their heavy burden to show that she could not possibly recover against Mr. Georgiades or Mr. Piehl"); *Knutson v. Allis Chalmers Corp.*, 358 F.Supp.2d 983, 993 (D. Nev. 2005) ("In order to establish that there has been no fraudulent joinder, a plaintiff need only have one potentially valid claim against a non-diverse defendant," citing *Gray v. Beverly Enterprises–Mississippi*, 390 F.3d 400, 411-12 (5th Cir. 2004) ("Although our fraudulent joinder decisions have never made the issue entirely pellucid, § 1441's holistic approach to removal mandates that the existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court")).

---

[34]Complaint, ¶ 1.

[35]Removal, ¶ 6.

[36]See Complaint, ¶¶ 1, 5.

[37]*Id.*, ¶ 2.

[38]Removal, ¶ 23 ("At the time of the filing of the Complaint, sham defendants Gutierrez, Millan, Terrazas, and Martinez were and currently are citizens of the State of California."). See also *id.*, ¶ 24 (arguing that the individual defendants were fraudulently joined to defeat diversity).

### 4. Legal Standard Governing Fraudulent Joinder

The joinder of a non-diverse defendant is considered fraudulent, and the party's citizenship is disregarded for purposes of subject matter jurisdiction, "[i]f the plaintiff fails to state a cause of action against the [non-diverse] defendant, and the failure is obvious according to the settled rules of the state. . . ." *Hamilton Materials, Inc. v. Dow Chemical Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). "It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing *Emrich*, 846 F.2d 1193 & n. 1; *McCabe*, 811 F.2d at 1339); see also *Burden v. General Dynamics Corp.*, 60 F.3d 213, 221-22 (5th Cir. 1995) (concluding that the district court had subject matter jurisdiction where a defendant charged with intentional infliction of emotional distress had been fraudulently joined). Defendants alleging fraudulent joinder must "prove that individuals joined in the action cannot be liable on any theory." *Ritchey*, 139 F.3d at 1318; see also *McCabe*, 811 F.2d at 1339 (stating that a removing defendant is entitled to present facts showing that joinder is fraudulent); *Campana v. American Home Products Corp.*, No. 1:99cv250 MMP, 2000 WL 35547714, *3 (N.D. Fla. Mar. 7, 2000) ("The removing party must show, with credible evidence, that there is no possibility that a plaintiff can state a cause of action against the nondiverse defendant").

> "Merely showing that an action is likely to be dismissed against [a] defendant does not demonstrate fraudulent joinder. Rather, it must appear to 'a near certainty' that joinder was fraudulent. As a result, the removing defendant must establish that there is absolutely no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant. . . . Thus, that a claim against the in-state defendant is insufficiently pled does not prove . . . that there is absolutely no possibility that the plaintiff will be able to establish a cause of action." *Amarant v. Home Depot U.S.A., Inc.*, No. 1:13–cv–00245–LJO–SKO, 2013 WL 3146809, *6 (E.D. Cal. June 18, 2013).

Defendants must prove fraudulent joinder by clear and convincing evidence. *Hamilton Materials*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). Thus, "fraudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting favorably the Fifth Circuit's decision in *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (citations omitted)); see also *West American Corp. v. Vaughan Basset Furniture*, 765 F.2d 932, 936 n. 6 (9th Cir. 1985) (stating that the court may consider affidavits, depositions, and other evidence); James W. M. Moore, MOORE'S FEDERAL PRACTICE § 102.21(5)(a) (3d ed. 2008) ("The federal court's review for fraud must be based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties").

Because courts must resolve all doubts against removal, a court determining whether joinder is fraudulent "must resolve all material ambiguities in state law in plaintiff's favor." *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117 (N.D. Cal. 2002) (citing *Good v. Prudential*, 5 F.Supp.2d 804, 807 (N.D. Cal. 1998)). "If there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendant[,] the court must remand." *Macey*, 220 F.Supp.2d at 1117; see also *Good*, 5 F.Supp.2d at 807 ("The defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the

alleged sham defendant"). Given this standard, "[t]here is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F.Supp.2d 1005, 1008 (N.D. Cal. 2001).

### 5. Whether Christ Has Alleged Non-Fanciful Claims Against the Individual Defendants

As noted, Christ alleges claims against each of the four individual defendants for age and disability harassment in violation of FEHA. Christ did not reply to the order to show cause; he did, however, file a motion to remand after the order to show cause issued. In the motion, he asserts only that defendants fail to meet their burden of showing that he cannot allege a non-fanciful age harassment claim.[39] The court construes this as an admission that he cannot state a viable disability harassment claim, and therefore focuses only on his age harassment claim. Because the court concludes, moreover, that defendants have not shown there is absolutely no possibility that Christ can allege an age harassment claim against Gutierrez, remand is proper on this basis, and the court need not decide whether the claim against the remaining defendants is viable. See *Knutson*, 358 F.Supp.2d at 993 ("In order to establish that there has been no fraudulent joinder, a plaintiff need only have one potentially valid claim against a non-diverse defendant," citing *Gray*, 390 F.3d at 411-12 ("Although our fraudulent joinder decisions have never made the issue entirely pellucid, § 1441's holistic approach to removal mandates that the existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court")).

To state a FEHA harassment claim, an employee must allege facts showing that workplace harassment was "severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees." *Hughes v. Pair*, 46 Cal.4th 1035, 1043 (2009) (quoting *Miller v. Department of Corrections*, 36 Cal.4th 446, 462 (2005)); see also *Andrade v. Staples, Inc.*, No. CV 14-7786 PA (Ex), 2014 WL 5106905, *3 (C.D. Cal. Oct. 9, 2014) ("Harassment, under FEHA, 'can take the form of discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Moreover, harassing conduct takes place outside the scope of necessary job performance, [and is] conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives,'" quoting *Rehmani v. Superior Court*, 204 Cal.App.4th 945, 951 (2012)). FEHA harassment claims can be asserted against individuals. CAL. GOV'T. CODE § 12940(i)-(j).[40]

---

[39]Motion at 8-11.

[40]The protected group, for purposes of age discrimination [and harassment] statutes, consists of 'individuals who are at least 40 years of age.'" *Schechner v. KPIX TV*, No. CV 08-05049 MHP, 2011 WL 109144, *4 (N.D. Cal. Jan. 13, 2011) (quoting *Katz v. Regents of the Univ. of Cal.*, 229 F.3d 831, 835 (9th Cir. 2000)); see also *Rodriquez v. Int'l Longshore and Warehouse Union Local 29,* No. CV 08-00433, 2009 WL 2575987, *11 (S.D. Cal. Aug. 18, 2009) (dismissing FEHA and ADEA claims where plaintiff failed to show that the challenged practice "adversely impacts the protected classification of workers over 40"). Christ alleges that he was 43 years old at the time of the alleged age harassment.

Christ alleges that during his employment for Staples, he was subjected to repeated acts of harassment.[41] He alleges, moreover, that the harassment was motivated by discriminatory animus.[42] Christ provides several specific examples of purportedly harassing conduct. He asserts that Gutierrez wanted to replace older drivers with younger ones, and that he not only purposefully assigned easier routes to younger drivers, but that he was gave older drivers mileage goals that were impossible to achieve.[43] On one occasion, for example, Gutierrez allegedly directed Christ to complete a route that was 80 miles long in 60 miles.[44] Christ contends that when he did not complete the route in 60 miles (which purportedly would have been impossible), he was reprimanded by Millan.[45] He also alleges that Gutierrez falsely accused him of "threats or acts of violence" following the incident with Mendoza to have him fired.[46] Finally, Christ alleges that he was replaced with a younger, part-time employee – consistent with Gutierrez's purported desire to replace older workers with younger, lower salary employees.[47]

Defendants contend first that Christ's allegations cannot support a FEHA harassment claim because they relate to "quintessential personnel management action" related to job performance, productivity, and employee conduct.[48] See *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 63 (1996) ("Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job"). The court cannot agree. Viewed in context, Gutierrez's and Millan's alleged actions "reach far beyond typical personnel management decisions." See *Hale v. Bank of Am., N.A.*, No. CV 12-10064 MMM (PJWx), 2013 WL 989968, *5 (C.D. Cal. Mar. 13, 2013). Christ contends, for example, that as part of Gutierrez's scheme to replace older drivers with younger, lower-salary drivers, he was assigned more difficult – and even impossible – mileage goals,

---

(Complaint, ¶ 6(a).) He therefore adequately pleads that he is a member of a protected group.

[41]Complaint, ¶ 7, 8.

[42]*Id*., ¶¶ 7(d), (e).

[43]*Id*., ¶ 7(f).

[44]*Id*., ¶ 7(f).

[45]*Id*., ¶ 7(g).

[46]*Id*., ¶¶ 7(n), 8. Although this allegation is not clearly laid out in the complaint, Christ sharpens presentation of the argument in his motion to remand. Because the court is not limited to the allegations in the complaint in determining fraudulent joinder, it will consider the argument as if it were alleged in the complaint. Cf. *Morris*, 236 F.3d at 1068 ("fraudulent joinder claims may be resolved by 'piercing the pleadings'").

[47]Complaint, ¶ 8.

[48]Response at 7-9, 13-14.

and that Millan reprimanded him when he was unable to meet the goals. Christ also alleges that Gutierrez falsely accused him of threatening Mendoza or engaging in acts of violence. This resulted in his termination.

The court must, at this stage, consider these allegations in the light most favorable to Christ. Considered in that light, the allegations could support a finding that "at least some of the actions purportedly taken were not strictly personnel management decisions." *Hale*, 2013 WL 989968 at *5; *Dagley v. Target Corp., Inc.*, No. CV–09–1330 VBF (AGRx), 2009 WL 910558, *3 (C.D. Cal. Mar. 31, 2009) (holding that "if a plaintiff 'alleges conduct other than that inherent in terminating an employee,' such as violating a 'fundamental interest of the employee . . . in a deceptive manner that results in the plaintiff being denied rights granted to other employees,'" then the plaintiff has alleged behavior beyond "a simple pleading of personnel management activity," quoting *Gibson v. American Airlines*, No. CV 96–1444 FMS, 1996 WL 329632, *4 (N.D. Cal. June 6, 1996)). See also *Smith v. Staples Contract & Commercial, Inc.*, No. CV 14-07836-AB (ASx), 2014 WL 7333421, *6 (C.D. Cal. Dec. 19, 2014) ("Defendants contend that every fact Plaintiffs allege as to Morrison constitutes an act necessary to Morrison's job performance, rather than one 'engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.' It may be that a jury would so find, but that is not the inquiry before the court. In California, whether an act falls within the scope of employment is generally a question of fact reserved for the jury. Of course, in exceptional circumstances the facts may be so clear that 'no conflicting inferences are possible' and courts may determine whether the conduct fell within the delegated scope of a supervisor's authority as a matter of law. But Defendants offer no argument to suggest that this is such a case. Rather, Defendants cite to three cases in which other district courts granted motions to dismiss harassment claims for failure to allege any conduct outside the scope of the individual supervisor's necessary job functions. Notably absent from Defendants' argument is any discussion of why *Morrison's* alleged conduct *in this case* was so obviously necessary to his job functions that the Court may so decide as a matter of law. It is not the Court's role to resolve that factual question, which must be decided in state court" (citations omitted)). Importantly, "to the extent that it is possible that California law would treat some or all of [Gutierrez's and/or Millan's] alleged conduct as 'necessary' to [their] job as a matter of law, it is 'at best a doubtful question of state law which should be tried in the state court and not determined in removal proceedings.'" *Smith*, 2014 WL 7333421 at *6 (quoting *Smith v. Southern Pacific Co.*, 187 F.2d 397, 402 (9th Cir. 1951)). Accordingly, the court cannot say that there is absolutely no possibility that Christ can assert a harassment claim against Gutierrez.

Defendants contend that Christ has not alleged conduct that is sufficiently severe or pervasive to alter the conditions of his work environment.[49] Defendants misapprehend the applicable legal standard. The court is not deciding whether Christ *has* stated a claim. Instead, the burden is on defendants to show by clear and convincing evidence that there is absolutely no possibility he can allege a harassment claim under well-settled California law. See *Good*, 5 F.Supp.2d at 807 ("The defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant"). As the California Supreme Court has noted, "acts

---

[49]Response at 11-12.

of discrimination can provide evidentiary support for a harassment claim by establishing discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus." *Roby v. McKesson Corp.*, 47 Cal.4th 686, 709 (2009). In *Roby*, the plaintiff's supervisor made negative comments to plaintiff about her body odor, expressed disapproval when she took rest breaks, and overlooked her when handing out small gifts to other employees. He also disciplined her over repeated absences, which were due to a medical condition, and ultimately terminated her employment. *Id*. at 695. A jury found in plaintiff's favor on her FEHA harassment claim. *Id.* at 692. The Court of Appeal reversed, reasoning – as defendants do here – that personnel decisions cannot constitute harassment. *Id*. at 700. It therefore disregarded every act that could be characterized as a personnel decision. *Id*. The California Supreme Court reversed, holding that the Court of Appeal had improperly excluded discriminatory personnel decisions in examining plaintiff's harassment claim. *Id*. at 709.

Here, Christ's allegations of harassment, coupled with corresponding allegations of discrimination, may suffice to state a harassment claim against Gutierrez. See *Hale*, 2013 WL 989968 at *6 ("[U]nder the California Supreme Court's holding in *Roby*, plaintiff's allegations of harassment, coupled with corresponding allegations of discrimination, may suffice to state a harassment claim against Cervantez"). Gutierrez is alleged to have given Christ mileage goals that were unachievable given the length of his route,[50] while giving younger drivers readily achievable goals. Millan is alleged to have reprimanded Christ when he was understandably unable to meet the goal.[51] Christ also alleges that Gutierrez fabricated a charge of threats or acts of violence to justify his termination, and that once terminated, Gutierrez replaced him with a younger driver.[52] Christ alleges that Gutierrez took these actions to discriminate against him because of his age. See *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (finding supervisor was not fraudulent joined where plaintiff alleged that defendants "discriminated against her based on her physical and mental disabilities and the fact that she had taken medical leave" and further alleged that "because of those disabilities, [the non-diverse supervisor] harassed her by intentionally issuing false write-ups claiming that Plaintiff had engaged in 'falsifying documents and stealing time,' ultimately leading to Plaintiff's termination"). Taken as true, Christ's allegations of ongoing discrimination support an inference that Gutierrez's actions were motivated by discriminatory animus, and could support a finding that a hostile work environment existed. See *Hale*, 2013 WL 989968, at *6. For this reason as well, the court cannot find there is no possibility that Christ can state a non-fanciful harassment claim against Gutierrez.

Defendants also contend Christ has not alleged sufficient harassment to state a FEHA claim. In addition to the fact that defendants rely on Christ's present pleading, and make no attempt to show that he *cannot* allege sufficient harassment, defendants overlook the fact that "[i]t is the quality of harassing conduct, and not necessarily the quantity, that is key." *Smith*, No. 2014 WL 7333421 at *7 (finding that an SCC supervisor was not fraudulently joined). As *Roby* makes clear, "California law recognizes that

---

[50]Complaint, ¶¶ 7(e), (f).

[51]*Id*.

[52]*Id*., ¶¶ 7(q), 8.

harassment by a supervisor like [Gutierrez] is more injurious than harassment by a co-worker." *Id.* (citing *Roby*, 47 Cal.4th at 709). Indeed, in some instances, the Court of Appeal has found that "even a single harassing act by a supervisor may be sufficient to support a claim of harassment." *Id.* (citing *Dee v. Vintage Petroleum, Inc*., 106 Cal.App.4th 30, 36 (2003) (reversing the trial court's grant of summary judgment in defendant's favor on a FEHA harassment claim where a supervisor uttered a single racial slur)).

Finally, to the extent Christ's allegations concerning Gutierrez's harassing comments or conduct are presently deficient, defendants have not established that he cannot amend his complaint to allege a viable harassment claim against Gutierrez. See *Andrade*, 2014 WL 5106905 at *3 ("Defendants do not satisfy their 'heavy burden' to show that there is 'no possibility' that Plaintiff can prevail on his harassment claim against Gutierrez. First, Defendant has failed to show that Plaintiff cannot modify his Complaint to clarify that additional age-related comments, such as 'we had another younger driver perform your route faster than you,' were made by Gutierrez. Second, Defendants ignore the California Supreme Court's guidance in *Roby* that 'official employment actions [may] constitute[ ] the evidentiary basis of [a] harassment cause of action' where 'the supervisor used those official actions as his means of conveying his offensive message'");[53] *Padilla,* 697 F.Supp.2d at 1159–60 ("[Defendant] was Plaintiff's direct supervisor at AT & T, and whether she did so in good or bad faith, it is clear that Hinojosa played an integral role in Plaintiff's termination. A defendant is not a fraudulently joined or sham defendant simply because the facts and law may further develop in a way that convinces the plaintiff to drop that defendant, and this Court cannot find that [defendant] is a fraudulently joined or sham defendant. . . . Denying federal diversity jurisdiction in this case, where Plaintiff seeks to include her direct supervisor in a lawsuit relating to her termination, is consistent with the Founders' intent in establishing diversity jurisdiction"). Like the supervisors in *Andrade* and *Padilla*, Gutierrez played an integral role in plaintiff's termination. Defendants do not address the possibility that Christ could cure any alleged deficiencies in pleading in an amended complaint; they simply assert that Christ has failed adequately to allege a harassment claim in his current complaint. Stated differently, "the complaint's shortcomings, if any, are strictly factual." *Stanbrough v. Georgia–Pacific Gypsum LLC, et al.*, No. CV 08-08303 GAF (AJWx), 2009 WL 137036, *2 (C.D. Cal. Jan. 20, 2009); *Burris v. AT & T Wireless, Inc.,* No. C 06–02904 JSW, 2006 WL 2038040, *2 (N.D. Cal. July 19, 2006) ("Although as currently ple[d], Burris has not alleged conduct which may be considered extreme or outrageous, Cingular has not demonstrated that, under California law, Burris would not be afforded leave to amend his complaint to cure this purported deficiency. Accordingly, Cingular failed to demonstrate that it is obvious under settled state law that Burris cannot prevail against Mr. Caniglia and thus has not demonstrated that this Court has subject matter jurisdiction").

For all of these reasons, defendants' response to the order to show cause falls short of carrying their heavy burden of showing that Gutierrez was fraudulently joined. Because defendants' assertion that Christ's harassment claim against Gutierrez fails as a matter of law is not persuasive, and because they have not shown that "there is absolutely no possibility" Christ can state a harassment claim against

---

[53]*Andrade* remanded an action against Staples and Gutierrez alleging a substantially similar age harassment claim.

Gutierrez, they have failed to demonstrate by clear and convincing evidence that Gutierrez was fraudulently joined as a defendant. See *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (remand is proper unless defendants can show the claim fails as a matter of law or can point to "undisputed facts that would preclude plaintiff's recovery against the in-state defendant"); *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003) (noting that "the inability to make the requisite decision [as to whether joinder is fraudulent] in a summary manner itself points to an inability of the removing party to carry its burden"). The court is therefore not free to disregard Gutierrez's citizenship in determining whether diversity jurisdiction exists. As defendants concede, Christ and Gutierrez are both California citizens. Consequently, complete diversity of citizenship is lacking, and the court must remand the case to Los Angeles Superior Court. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

### III. CONCLUSION

For the reasons stated, the court finds that Gutierrez was not fraudulently joined as a defendant. Accordingly, it lacks subject matter jurisdiction to hear the action, and directs the clerk to remand the action to Los Angeles Superior Court forthwith.[54]

---

[54] Because it is remanding, the court denies defendants' motion to dismiss [Docket No. 19] as moot. Defendants may file an appropriate demurrer in state court if they so desire.